**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:04cv92**

| | |
|---|---|
| W. KELLEY BRASWELL, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| HAYWOOD REGIONAL MEDICAL ) | |
| CENTER; HARRY LIPHAM, M.D.; ) | |
| ERIC REITZ, M.D.; DEBERA HUDERLY, ) | |
| M.D.; LUIS MUNOZ, M.D.; DAVID ) | |
| PETERSON, M.D.; CHRISTOPHER ) | |
| WENZEL, M.D.; and RICHARD STEEL, ) | |
| M.D., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the court on the joint Motion for Expedited Review of Plaintiff's Motion to Compel Discovery and plaintiff Motion to Compel Discovery Responses. The court notes that plaintiff did not comply with Local Rule 7.1(B), which provides that

> [i]f the party making the motion does not wish to file a reply brief, it must so inform the Court and opposing counsel in writing by the deadline for filing the reply brief . . . .

Instead of complying with the rule upon defendants' filing of their response, the parties waited eight days from the filing of the response to request expedited review. Had plaintiff simply notified the court that it would not be filing a reply, plaintiff's motion would have ripened July 25, 2005. The court has, therefore, considered the pending motion in an expedited fashion based on the August 2, 2005, request for expedition.

**I.    Introduction**

At issue are whether the minutes and records of various peer review committees

within Haywood Regional Medical Center are discoverable. Defendants object under Rule 26, Federal Rules of Civil Procedure, arguing that the request is overly broad and not likely to lead to the discovery of admissible evidence, that such material is protected by a state created peer review privilege, and that certain portions of the materials sought are protected by either the attorney-client privilege or the attorney work product privilege.

Review by this court begins with the decision of the district court disposing of defendants' Motion to Dismiss. In that motion, defendants asserted the peer review privilege as a bar to plaintiff's claims under Rule 12(b)(6), Federal Rules of Civil Procedure. In rejecting these arguments, the district court held that

> [l]ike the Fourth Circuit in *Virmani,* this Court finds the interest in adjudicating Plaintiff's due process and First Amendment claims outweighs the interest in facilitating candor in medical peer review proceedings. Therefore, under Plaintiff's claims, the Court refuses to adopt a federal medical peer review privilege.

Docket Entry 25, at 19. Such decision being law of the case, the undersigned will limit review of the pending motion to compel to whether the discovery request seeks material protected by the attorney-client privilege, seeks material covered by the work-product privilege, or exceeds the scope of discovery provided by Rule 26. Further, the undersigned will consider whether protective orders or other measures are necessary to assure the integrity of the peer review process and the confidentiality of individual medical records.

## II. Attorney-Client Communications

Rule 26(b)(1), Federal Rules of Civil Procedure, provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Because privileges are typically the product of state law, the scope of the privilege asserted is governed by the common law of the forum state.

In North Carolina, the attorney-client privilege arises when (1) the relationship existed

at the time of the communication; (2) the communication was made in confidence; (3) the communication relates to a matter concerning which the attorney is employed or is being professionally consulted; (4) the communication is made in the course of seeking or giving legal advice; and (5) the privilege, belonging to the client, is not waived. 1 Brandis, *North Carolina Evidence*, § 62 (3rd ed. 1988). See Phillips v. Dallas Carriers Corp., 133 F.R.D. 475 (E.D.N.C. 1990).

The privilege of attorney-client communications has also been recognized by federal courts:

> A counsel or attorney is not a competent witness to testify as to facts communicated to either by his client, in the course of the relation subsisting between them, but may be examined as to the mere fact of the existence of that relation.

Chirac v. Reinicker, 24 U.S. 280 (1826). Likewise, in Behrens v. Hironimus, 170 F.2d 627 (4th Cir. 1948), the Court of Appeals for the Fourth Circuit held:

> The privilege pertains to the subject matter . . . it does not attach to the creation of that relationship. . . . The client or the attorney may be permitted or compelled to testify as to the fact of his employment as attorney, or as to the fact of his having advised his client as to a certain matter, or performed certain services for the client.

Id., at 628 (quoting 70 *Corpus Juris*, Sect. 502; emphasis added); see also National Labor Relations Board v. Harvey, 349 F.2d 900, 904 (4th Cir. 1965) (quoting Behrens with approval).

Relevant to the inquiry posed by plaintiff's motion in this case, in Harvey, supra, the appellate court defined the boundaries of the attorney-client privilege:

> Not all communications to a lawyer are privileged. The authorities establish that the privilege is allowed only with respect to the client's communication made ". . . for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding . . . ."
>
> * * *
>
> One of the most illuminating discussions of the problem is found in

3

Hatton v. Robinson, 31 Mass. (14 Pick.) 416, 422 (1833). There Chief Justice Shaw said:

> This principle we take to be this; that so numerous and complex are the laws by which the rights and duties of citizens are governed, so important is it that they should be permitted to avail themselves of the superior skill and learning of those who are sanctioned by the law as its ministers and expounders, both in ascertaining their rights in the country, and maintaining them most safely in courts, without publishing those facts, which they have a right to keep secret, but which must be disclosed to a legal adviser and advocate, to enable him successfully to perform the duties of his office, that the law has considered it the wisest policy to encourage and sanction this confidence, by requiring that on such facts the mouth of the attorney shall be forever sealed. To the rule as thus stated we are still inclined to adhere.
>
> But the privilege of exemption from testifying to facts actually known to the witness, is in contravention to the general rule of law; it is therefore to be watched with some strictness, and is not to be extended beyond the limits of that principle of policy, upon which it is allowed.
>
> * * *
>
> But there are many cases, in which an attorney is employed in transacting business, not properly professional, and where the same might have been transacted by another agent. In such case the fact that the agent sustains the character of an attorney, does not render the communications attending it, privileged; and they may be testified to by him, as by any other agent.

Id., at 905-06.

From the foregoing cases it can be discerned that (1) while certain facts communicated between counsel and client are privileged, the fact of such relationship and the terms of such relationship are not; and (2) the privilege cannot be extended to transactions where "the same might have been transacted by another agent." Id.

Applying such principles to this case, communications and notes pertaining thereto that relate to the rendition of legal services are privileged; communications and notes that,

4

in the context of committee meetings, are more akin to notes taken by a committee secretary are not privileged. Advice rendered and the tangible evidence of such advice rendered by defendants' counsel on this matter or on any other matter of legal interest to the hospital or its constituent committees is protected by the attorney-client privilege. Any notes reflecting the opinions or thoughts of counsel or legal memoranda generated by the hospital's attorneys are covered by the work-product privilege. What is not covered is material of a factual nature, which would include notes of comments made by others at a meeting that were unrelated to the seeking of legal advice.

### III. Trial Preparation Materials

Rule 26(b)(3) provides that a party may obtain materials which are otherwise discoverable under Rule 26(b)(1) and prepared in anticipation of litigation

> only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Id. Trial preparation material is, most certainly, fraught with conclusions and opinions of attorneys and other representatives. In Henderson v. Zurn Indus., Inc., 131 F.R.D. 560 (S.D. Ind. 1990), the district court held:

> Rule 26(b)(3) is a limiting provision of the discovery rules that embraces the work product doctrine. Without Rule 26(b)(3), items prepared in anticipation of litigation are freely discoverable; with the Rule, the movant must meet a special burden such that discovery is more restrictive. With this background, it becomes clear that when the drafters of Rule 26(b)(3) added the language that materials prepared in anticipation for litigation are given qualified protection even if prepared by or for the party's representative, the drafters were narrowing rather than expanding the scope of discovery.

Id. at 566. Unlike the scope of the attorney-client privilege, the limits of the work-product doctrine are defined by federal case law. United Coal Companies v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988). In Thomas Organ Co. v. Jadranska Slobodna Plovidba, 54

F.R.D. 367 (N.D. Ill. 1972), the district court held:

> This trend which was followed in the framing of Rule 26(b)(3) compels the Court to conclude that any report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new Rule 26(b)(3) and (b)(4).

Id. at 372. The court will follow the well-reasoned opinion in Thomas Organ Co. and compel production of all documents that have "not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise." Id. As attorneys are prone to do, any commentary added to any discoverable document in the form of legal notes, conclusions, opinions, or thoughts added by counsel may be redacted. It is defendant's burden and obligation to prepare a privilege log of any such redactions or documents not produced as privileged and provide such to counsel for plaintiff.

## IV. Relevance

Defendants next contend that even if such materials are not work product or are not privileged attorney-client communications, they have no relevance to this litigation. The court agrees in part and disagrees in part.

To understand the scope of discovery, it is first necessary to understand the scope of plaintiff's claims. Putting aside any supplemental claims, plaintiff's Complaint primarily concerns alleged violations of federal constitutional rights made actionable by 42, United States Code, Section 1983. Plaintiff claims that defendants revoked his hospital privileges based on (1) his alleged exercise of first amendment rights, and (2) that such revocation was accomplished through the use of a biased tribunal.

As to the due process violation, the court assumes plaintiff is attempting to bring a procedural due process claim rather than a substantive due process claim, which would

require allegations of governmental conduct that "shock the conscience." Procedural due process "protect[s] persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978). Put another way,

> [i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.

Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis deleted). To challenge the process provided, "the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate . . . . When adequate remedies are provided and followed, no . . . deprivation of property without due process can result." Hudson v. Palmer, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring). Plaintiff's burden will be to show that defendants acted under color of state law, that he had a protectable property interest, and that such property interest was taken without due process. In furtherance of just such a claim, plaintiff has alleged inadequate notice, denial of an opportunity to be heard, and a biased tribunal.

In disposing of defendants' Motion to Dismiss, the district court found that "to ultimately prove his due process claim based on personal bias, the Plaintiff bears a heavy burden of putting forth evidence of the presence of 'actual bias or a high probability of bias.'" Docket Entry 25, at 9, f.n.3. When plaintiff's discovery requests are viewed in the context of the procedural due process claim, it is apparent that discovery of any notes, recordings, or other memorialization of comments made by committee members would be highly relevant as to the element of bias. Inasmuch as the attorney-client privilege is designed to encourage people to seek legal advice, any notes reflecting committee members seeking legal advice from counsel on the issue of bias, recusal, or conflict of interests and

7

the advice rendered would be privileged. The court, however, doubts that minutes would in any event reflect bias. Perhaps the most efficient manner for determining what occurred during those meetings is to depose the participants.

Plaintiff has also asserted a claim under Section 1983 for alleged retaliation for exercising his right to free speech. It is plaintiff's contention that defendants retaliated against him for writing a letter to a prospective employee of another surgical practice stating that the applicant's hiring would exceed the state's recommended surgeon population density. To make out a *prima facie* first amendment claim under Section 1983, plaintiff "must show *first* that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern." Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir.1990). The district court has already found plaintiff's letter to satisfy this element as a matter of law. See Docket Entry 25. The next element which plaintiff will be required to prove is that he was "deprived . . . of some valuable benefit." Huang, supra. If plaintiff can make that showing, he will next be required to show a nexus between the protected conduct and the deprivation. It will be plaintiff's burden to show that "'but for' the protected expression the employer would not have taken the alleged retaliatory action." Huang, supra.

In this case, plaintiff alleges that defendant Dr. Harry Lipman, M.D., was particularly offended by the letter inasmuch as his spouse had some involvement in recruiting the doctor with whom plaintiff corresponded, and that Defendant Lipman was on the committee that took the adverse action. In attempting to establish the nexus between the two elements, plaintiff seeks discovery in the form of minutes and actions the committee took as to other health care professionals. Specifically, plaintiff seeks information that could show that he was treated disparately by the committee. Direct evidence of intent to violate constitutional

rights is seldom found. "Direct evidence of a defendant's discriminatory intent is rare; therefore, plaintiffs must ordinarily prove their claims through circumstantial evidence." Harrington v. Harris, 118 F.3d 359, 367 (5th Cir.), cert. denied, 522 U.S. 1016 (1997). As the Supreme Court held, "[t]he burden of establishing a *prima facie* case of disparate treatment is not onerous." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). "Above all, courts will look at evidence of discrimination not in splendid isolation, but as part of an aggregate package of proof offered by the plaintiff." Mesnick v. GeneralElectric Co., 950 F.2d 816, 824 (1st Cir. 1991). Because direct evidence is seldom available in the context of civil rights violations, plaintiff is attempting to gather circumstantial evidence. Specifically, plaintiff is attempting to discover evidence that he was treated differently than similarly situated individuals by the hospital.

While plaintiff's requests are appropriate, the court agrees with defendants that the requests as submitted by plaintiff are overly broad in that they would garner records concerning medial professionals not similarly situated to plaintiff.

Having given careful consideration to plaintiff's discovery requests, it would appear that plaintiff is entitled to discovery of materials concerning the hospital's treatment of other surgeons and physicians who actually performed medical procedures at the hospital and who had privileges either granted, renewed, or revoked. Such discovery would include occurrence reports, summaries of occurrence reports, memoranda generated by the hospital concerning such occurrences, notes of committee actions, and memoranda as to what disciplinary action was taken.

Defendants also argue that the scope should be limited to committees on which the named doctors served. Inasmuch as the hospital is a named defendant and such individual defendants were acting on behalf of the hospital, it would seem appropriate to require

disclosure of all reports from any and all committees acting on behalf of the hospital concerning the privileges granted, renewed, or revoked for any physician or surgeon who actually performed procedures at the hospital during a relevant period.

Defendants also object to the time period covered. Inasmuch as the statute of limitations for filing a Section 1983 claim is three years, National Advertising Co. v. City of Raleigh, 947 F.2d 1158 (4th Cir. 1991), cert. denied, 60 U.S.L.W. 3782 (U.S. 1992) the undersigned finds that a three year period before May 17, 2004, is a reasonable time frame for discovery. Disparate treatment can also be proved with evidence of conduct that occurs after a lawsuit is filed.

> the court has a right to consider . . . post-complaint conduct as probative both on the allegations of post-complaint discrimination . . . and on allegations of pre-complaint discrimination . . . . Post-complaint non- discriminatory conduct does not, however, erase pre-complaint unlawful conduct if such there be. The weight to be ascribed to evidence of the existence or lack of it of pre-complaint discrimination varies, of course, with the circumstances and depends entirely on the extent to which there is a showing of continuity between the post-complaint conduct and the pre-complaint conduct. Its probative value may disappear altogether if defendant's conduct changes.

EEOC v. Sheet Metal Workers, International Ass'n, Local No. 122, 463 F.Supp. 388, 429 (Md. 1978). See also Cypress v. Newport News General and Nonsectarian Hospital, 375 F.2d 648, 657-658 (4th Cir. 1967) (concerning relevance of evidence of post-complaint admission of 1 of 18 African-American physicians to hospital privileges). The court will allow the time frame of such discovery to extend to May 17, 2005, of this year, with a continuing obligation to supplement up to trial.

V.  **Limitations**

While this court has already found that protection of constitutional rights outweighs a peer review privilege, the court will impose a protective order greatly limiting subsequent disclosure of any peer review materials, imposing requirements to protect the privacy of

patients as well as physicians, and precisely limiting who in this litigation may see such materials.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1)    the joint Motion for Expedited Review of Plaintiff's Motion to Compel Discovery is **GRANTED**;

(2)    plaintiff's Motion to Compel is **GRANTED** in part and **DENIED** in part as discussed above, and defendants shall produce and fully respond to all discovery requests subject to the limitations discussed above and the protections imposed herein;

(3)    the parties shall bear their own costs in bringing such motion inasmuch as the equities are fairly balanced between the lack of production by defendants and the overbreadth of plaintiff's request;

(4)    a **PROTECTIVE ORDER IS ENTERED** as to discovery produced in accordance with this Order:

    (A)    defendants shall produce all materials requested and as specified and limited above not later than August 31, 2005, at no cost to plaintiff;

    (B)    any materials produced by defendants shall be used only in this litigation and shall, along with any copies thereof, be returned to the defendants at the conclusion of this litigation;

    (C)    any materials produced subsequent to this Order may, in addition to redactions based on the privileges found by this Order, be redacted to:

        (1)    protect the identity of the patient and any personal medical information not necessary to determine the gravity of an

"occurrence";

(2) to protect the identity and professional integrity of the doctor. If such redaction would compromise the usefulness of the information provided, that is, redaction would prevent plaintiff from making a correlation between the doctor and any financial relationship to committee members, defendants may identify the doctor as "Doctor A, competitor" or "Doctor A, non-competitor with committee members _____;

(D) any and all documents produced in accordance with this Order shall be marked on each page "CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER";

(E) in preparing for trial, plaintiff's counsel may only disclose such documents to attorneys of record in this case and any legal professionals in their employ. Other than officers of this court, every person who views any such document shall sign an appropriate notice that they have read this Protective Order and understand that violation of such protective order may be punished by contempt and/or imposition of a fine and/or other sanction;

(F) in preparing for trial, counsel for plaintiff may not disclose such documents to plaintiff, but may employ a medical expert to assist in reviewing such documents, subject to the above paragraph. This limitation shall not apply to documents contained in plaintiff's professional review or employment file or to documents produced in response to Request for Production of Documents No. 11. Counsel for

plaintiff may discuss the content of the remainder of documents with plaintiff for purposes of preparing for trial, but shall not make such documents available to plaintiff for his personal review;

(G) Under no circumstances shall any party to this action, any attorney, or anyone permitted by this order discuss or otherwise reveal any of the information contained in such production in any public or private fashion other than in the professional preparation of this matter for trial and in the presentation of such materials at trial; and

(H) In the event counsel for any party finds in the execution of this Protective Order that the provisions are either too restrictive or not restrictive enough, they are granted leave to contact the chambers of the undersigned for purposes of conducting a joint conference either by way of phone or in person. Due to the time frame for trial, the court does not anticipate any further written discovery motions.

**Signed: August 9, 2005**

**Signed: August 9, 2005**

_Dennis L. Howell_
Dennis L. Howell
United States Magistrate Judge

_Dennis L. Howell_
Dennis L. Howell
United States Magistrate Judge